UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

IN THE MATTER OF THE EXTRADITION
OF FADEL BERRI                                        07-M-1205 (VVP)

-------------------------------------------------------------------x

# MEMORANDUM OPINION AND PARTIAL
# CERTIFICATION AS TO EXTRADITION

The Federal Republic of Germany seeks the extradition of the relator Fadel Berri to face prosecution on multiple counts of fraud in connection with the sale of long distance telephone services. Berri opposes extradition on the ground that he has already been acquitted of these charges in Lebanon. As set forth below, I conclude that probable cause and the other prerequisites for extradition have been established with respect to many of the charges, and that the Federal Republic of Germany is to be provided a period of time to submit additional evidence as to those charges for which probable cause has not been established.

Extradition is typically a matter of treaty between our government and the government of another country, and the Executive Branch, through the Secretary of State, thus has the ultimate decisionmaking authority concerning requests by foreign governments for the extradition of persons they have charged with crimes. *See, e.g., Lo Duca v. United States*, 93 F.3d 1100, 1103-04 (2nd Cir. 1996). The judicial role in extradition, though important, is limited, and is set out in 18 U.S.C. § 3184. That section requires, as a prerequisite for extradition, that either a district judge or a magistrate judge review the evidence offered by the country requesting extradition to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. If so, the judge issues a certification to that effect to the Secretary of State, who then has the final authority to decide whether to extradite the fugitive. *Lo Duca*, 93 F.3d at 1103.

In recognition of the courts' limited role in extradition, the Second Circuit has defined the court's task as follows:

> The judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof.

*Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000) (citing *Lo Duca*, 93 F.3d at 1103-04 and *United States v. Kin-Hong*, 110 F.3d 103, 109-10 (1st Cir.), *stay denied*, 520 U.S. 1206, 117 S. Ct. 1491, 137 L. Ed. 2d 816 (1997)).

Taking these three tasks in turn, the court finds that the submissions made by the government establish the existence of a valid treaty between the United States and the Federal Republic of Germany and that the treaty permits extradition for the crimes of fraud charged against Berri. *See* Extradition Treaty Between the United States of America and the Federal Republic of Germany, June 20, 1978, T.I.A.S. No. 9785, art. 2(1), *as amended by* Supplementary Extradition Treaty with the Federal Republic of Germany, U.S. - F.R.G., Oct. 21, 1986, S. Treaty Doc. No. 100-6 (the "Extradition Treaty"), art. 1(a). Berri does not dispute either of these conclusions; nor does he dispute identity. Affirmation and Memorandum of Law in Support of Motion for Denial of Petition by United States Department of State for Certification of Extraditability, May 30, 2008 (hereinafter "May 30 Aff."), p. 1 at n.1.

Berri does argue, however, that the government has failed to provide evidence sufficient to satisfy the applicable standard of proof for extradition. He correctly identifies probable cause as the applicable standard of proof. *See* Extradition Treaty, art. 14(3)(a) (extradition requests must include "such evidence as, according to the law of the Requested State, would justify his arrest and committal for trial if the offense had been committed there"). The probable cause determination is made by reference to federal law, *In re Extradition of Ben-Dak*, No. 06 Mag. 1540, 2008 WL 1307816, at *3 (S.D.N.Y. Apr. 11, 2008) (*citing Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir.1980)), under which "probable cause exists where there is knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested," *id*. (*quoting United States v. Howard*, 489 F.3d 484, 491 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied*, 128 S. Ct. 525 (2007).

Berri's argument that probable cause is lacking here rests entirely on proceedings conducted in Lebanon that appear to be related in some way to the charges for which extradition is sought here. In support of his argument, Berri has submitted two documents that appear to be translations of a corrected judgment issued by a judicial tribunal in Lebanon on December 1,

2007 and a statement by a Lebanese official dated December 11, 2007.[1]  See Affirmation and Memorandum of Law in Support of Motion for Termination of Provisional Arrest and Release, Dec. 19, 2007 (hereinafter "Dec. 19 Aff."), Exs. D & E. [2]  The corrected judgment purports to correct an earlier judgment entered by a Lebanese tribunal in 2005 declaring Berri innocent of charges identified in an Interpol "formality" asserting that he had "exploited several places equipped with telephone booths and not paying the costs due by him to the telephone company, equivalent to 300 Deutsche Mark." See Judgment (Dec. 19 Aff. Ex. D) at 2-3. The corrected Judgment did not upset the previous finding of innocence, but changed the amount of unpaid costs from 300 to 300,000 Deutsche Marks. The second document appears simply to be a statement by a Lebanese official that as of December 11, 2007, there were no outstanding judgments or other judicial proceedings against Berri in Lebanon.

These documents, Berri argues, undercut the evidence of probable cause submitted by Germany. He points in particular to the corrected judgment, which pronounced Berri innocent because of the insufficiency of the evidence, see Judgment (Dec. 19 Aff. Ex. D) at third page, and thus "casts a fatal curtain over the probable cause requirement for extradition." May 30 Aff., ¶ 13.

A relator such as Berri has a limited right to introduce evidence "which explains rather than contradicts the demanding country's proof." *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir.) (*quoting United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir.1963), *cert. denied*, 376 U.S. 952 (1964)), *cert. dismissed*, 414 U.S. 884 (1973). So-called "explanatory evidence" is admitted "to afford an accused person the opportunity to present reasonably

---

[1] The dates in the documents use the convention "day/month/year" followed in much of the world, rather than the convention "month/day/year" used in the United States. Thus the date "01/12/2007" as listed in the judgment is December 1, 2007, not January 12, 2007. That the former, rather than the latter, convention is used in these documents is apparent from the appearance, elsewhere in the judgment, of the date "20/07/2005" which must be July 20, 2005 since there is no 20th month.

[2] The documents were not properly authenticated by Berri. Additional copies of the documents, along with other communications between German and Lebanese authorites, were submitted to the court by German authorities. See Documents annexed to Gov't Letter to Clerk of Court, Apr. 21, 2008. These additional documents are properly authenticated by State Department officials as having been received from German authorities. The Lebanese documents, however, have never been properly authenticated as official records of Lebanon, although the photocopies bear stamps and seals that suggest they are official documents.

clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." *In re Extradition of Sandhu*, No. 90 Cr. Misc. 1, 1997 WL 277394, at *6 (S.D.N.Y. May 23, 1997) (*quoting In re Extradition Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978)). The court must evaluate such evidence with care, however. "[W]hat tends to obliterate probable cause may be considered but not what merely contradicts it." *Shapiro v. Ferrandina*, 355 F. Supp. 563, 572 (S.D.N.Y.), *modified and aff'd*, 478 F.2d 894, 904 (2d Cir.1973); *accord United States v. Hunte*, No. 04-M-0721, 2006 WL 20773, at *6 (E.D.N.Y. Jan. 4, 2006).

There are several problems with Berri's argument and his reliance on the corrected judgment. In the first place, the corrected judgment does nothing to explain Germany's evidence. The corrected judgment does not seek to cast a different light on the proof submitted in support of the extradition request by offering a compelling alternative view of the evidence. Rather, Berri seeks to use the judgment as contradictory proof that he is innocent. As such, it strays from the purpose for which such evidence may be considered.

More importantly, the judgment is proof of nothing concerning the charges brought by Germany. Although the nature of the investigation and other proceedings that led to the judgment are not at all clear, what is abundantly clear from the face of the judgment is that the tribunal did not have the benefit of any evidence submitted by the German government and did not address any of the specific charges set forth in the charging documents before this court. The judgment itself states that "the Interpol formality came void of any proof or evidence." Judgment (Dec. 19 Ex. D) at third page. Thus, the tribunal did not consider any of the evidence now before this court, or even the specific charges here, in reaching its judgment of innocence based on the insufficiency of the evidence. That the German evidence was not before the Lebanese tribunal is confirmed by statements submitted to this court by the German authorities. Maren Stolper, the German prosecutor who is handling the extradition and prosecution of Berri in Hanover, Germany, asserts that Germany never asked Lebanon to take responsibility for the prosecution of Berri and Lebanese authorities never made a request of her office for the relevant files. See Letter and Affidavit of Maren Stolper, Jan. 4, 2008, annexed to U.S. Dep't of State Documentary Evidence Certificate, Jan. 31, 2008, accompanying Note Verbale No. 29/2008, submitted with Letter dated March 3, 2008, Dkt. Entry 22. Nor was any employee of the victim

of the offenses, Deutsche Telekom AG called as a witness before the Lebanese tribunal. *Id*. The Lebanese judgment is therefore of no consequence in evaluating the proof submitted to this court by Germany and can have no effect on this court's probable cause determination.

Nevertheless, this court still has the obligation to determine whether the evidence of criminality offered in support of Germany's request supports a finding of probable cause that the relator, Berri, has committed the offenses charged. The offenses are set out in a Warrant of Arrest dated September 1, 2003 and issued by the Hanover County Court. See Warrant of Arrest, Sept. 1, 2003 (annexed to U.S. Dep't of State Documentary Evidence Certificate, Nov. 26, 2007) (hereinafter "Warrant"). The Warrant charges that Berri, acting as the organizer of a group of confederates, committed fraud by operating so-called "telephone rooms" in Germany. The fraud entailed the rental of numerous apartments, often under assumed names, in which ISDN (Integrated Services Digital Network) lines were used to complete long distance telephone calls that were initiated in Lebanon and routed through Germany to points all over the world. The ISDN lines were obtained from Deutsche Telekom, also under false names, with no intention to pay the fees that accrued for the use of the lines. The "telephone rooms" were manned by operators who fielded telephone calls from Lebanon and then routed them, using three-way conferencing available over the ISDN lines, to their destinations in accordance with the callers' instructions. The conspiracy earned money by charging for the calls in Lebanon, but not paying the fees for the calls which accrued in Germany. The Warrant charges 47 counts, each relating to a different ISDN line obtained under a false name, concerning conduct occurring during a period from August 1998 to January 2000 with losses to Deutsche Telecom in excess of 1 million euros in unpaid fees.

The evidence submitted by Germany in support of the charges include three written statements signed by Berri resulting from interviews by German investigators on December 14 and 15, 1999, and from an appearance by Berri before a German judicial officer on December 20, 1999.[3] In those statements Berri admits his involvement in the scheme, describing with

---

[3]Copies of the statements, together with certified English translations, are annexed to U.S. Dep't of State Documentary Evidence Certificate, Jan. 31, 2008, accompanying Note Verbale No. 29/2008, which was submitted to the Clerk of theCcourt under cover of the government's letter dated March 3, 2008, Dkt. Entry 22.

particularity how it operated, as well as the roles he and various other confederates played in the scheme. He also identified various addresses at which telephone rooms were operated, including some of the addresses charged in the Warrant.

In addition to Berri's statements, the request is supported by a statement of facts endorsed by the German prosecutor, Maren Stolper, which includes summaries of witness statements made by several of the confederates Berri identified.[4] Those witness statements corroborate Berri's information about the scheme and provide additional information about locations where telephone rooms were operated with Berri's knowledge and assistance.

Based on a review of the evidence submitted, I conclude that there is probable cause for the following numbered charges in the Warrant: 1-22, 25-30, 33-34, 36-42, and 44. These charges all involve either locations that Berri identified as locations where he was involved in operating telephone rooms, or confederates who acknowledged working with Berri and with whom he acknowledged having worked, or both. I therefore certify that probable cause and all other prerequisites for the extradition of Fadel Berri under applicable law have been satisfied.

As to the following numbered charges in the Warrant, probable cause has not been adequately established: 23-24, 31-32, 35, 43, and 45-47. These charges concern locations and confederates that Berri has not acknowledged and about whom little if any evidence is provided in the summaries of the statements made by any of the other witnesses. Under the Extradition Treaty, a state requesting extradition is entitled to a period of time to provide additional evidence if the state from whom extradition is requested deems the submitted evidence insufficient. Extradition Treaty, art.15(1). Accordingly, the Federal Republic of Germany is granted 30 days to submit additional evidence as to these charges. If additional evidence is not submitted and no properly supported request for an extension is made within that time, the Clerk of Court is directed to forward this Partial Certification and other requisite documents to the Secretary of State as provided by 18 U.S.C. § 3184.

---

[4]The Statement of Facts, together with a certified English translation, are annexed to U.S. Dep't of State Documentary Evidence Certificate, Nov. 26, 2007, which was submitted to the Clerk of the Court under cover of the government's letter dated Dec. 27, 2007, Dkt. Entry 11. Another certified translation by a different translator is annexed to U.S. Dep't of State Documentary Evidence Certificate, Dec. 11, 2008, accompanying Note Verbale No. 5/2008, which was submitted to the Clerk of the Court under cover of the government's letter dated Feb. 12, 2008, Dkt. Entry 19.


                                                **SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
       September 11, 2008